UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WADE STEVEN GARDNER, ET AL.,

    Plaintiffs,

v.                                   Case No. 8:18-cv-2843-T-33JSS

WILLIAM MUTZ, ET AL.,

    Defendants.
_____/

**<u>ORDER</u>**

This matter comes before the Court upon consideration of Plaintiffs Wade Steven Gardner, Mary Joyce Stevens, Randy Whittaker, Phil Walters, Ken Daniel, and Veterans Monuments of America, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3), filed on November 20, 2018. For the reasons that follow, the Motion is denied to the extent it seeks a temporary restraining order but is referred to Magistrate Judge Julie S. Sneed to the extent it seeks a preliminary injunction.

**I.**    **<u>Background</u>**

On November 20, 2018, Plaintiffs initiated this action against Defendants William Mutz, Tony Delgado, Don Selvage, Justin Troller, Phillip Walker, Antonio Padilla, and Kenneth Detzner — all of whom are involved in the City of Lakeland's

1

government in various roles, such as City Commissioner, City manager, or Mayor. (Doc. # 1).

This action concerns a memorial — a "Cenotaph" — dedicated to Confederate soldiers who died during the Civil War that stands in the City of Lakeland's Munn Park. (Id. at 5-7). The memorial was erected by the United Daughters of the Confederacy ("UDC") with approval of the Lakeland City Commission in 1910. (Id. at 7). "The massive 26' foot 2 1/2 story, approximately 14 ton Cenotaph, with base dimensions of 9' by 9' was dedicated on June 3 1910." (Id.). The memorial is engraved with the words "Confederate Dead," as well as a poem and images of Confederate flags. (Id. at 9).

Over a century passed after the memorial was erected. Although the memorial obtained landmark status, the City of Lakeland began receiving complaints about the memorial. (Id. at 14-15). So, on December 4, 2017, the Lakeland City Commission voted at a Lakeland City Council meeting to "start the process" of removing the memorial. (Id. at 15). Plaintiffs maintain this vote was "a violation of the City's own Historic Preservation Ordinance." (Id.). Then, "[o]n May 7, 2018 the Lakeland City Commission voted to relocate the Cenotaph from Historic Munn Park to another site out of the historic district, 'provided private donations paid for the full

costs.'" (Id.). In October of 2018, some Defendants voted to remove the memorial using the City's funds for installing red light cameras. (Id. at 16). A Lakeland City Commission meeting was scheduled for November 19, 2018, to discuss, among other things, diversion of some funds from the red light camera program to remove the memorial. (Id. at 17). The Complaint does not contain allegations concerning the result of the November 19 meeting.

In the Complaint, Plaintiffs assert seven counts against Defendants. (Id. at 22-29). They allege that Defendants have violated the First and Fourteenth Amendments of the United States Constitution by "deciding to remove the Cenotaph which communicated minority political speech in a public forum." (Id. at 22). They seek a declaration that Defendants' actions violate their due process rights. (Id. at 26). Furthermore, Plaintiffs assert claims that Defendants violated the City of Lakeland's Historic Preservation Ordinance and Section 267.013, Florida Statutes, as well as violated the public trust and breached a bailment agreement. (Id. at 24-29).

Additionally, Plaintiffs now seek both an *ex parte* temporary restraining order and preliminary injunction to prevent removal of the memorial. (Doc. # 3).

## II. **Discussion**

A court may issue a temporary restraining order if the movant establishes: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). "The movant bears the burden of establishing entitlement to a temporary restraining order." Edwards v. Cofield, No. 3:17-CV-321-WKW, 2017 WL 2255775, at *1 (M.D. Ala. May 18, 2017)(citing Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).

"Before addressing whether [Plaintiffs have] met this four-prong showing, however, the Court must first consider whether [Plaintiffs have] shown adequate justification for failing to give notice to [Defendants]." Emerging Vision, Inc. v. Glachman, No. 10-80734-CIV, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010), report and recommendation adopted, No. 10-80734-CIV, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). A court may issue a temporary restraining order without notice to the adverse parties or their attorneys only if:

4

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A) and (B).

"To obtain *ex parte* relief, a party must strictly comply with these requirements. They are not mere technicalities, but establish minimum due process." Emerging Vision, Inc., 2010 WL 3293346, at *3 (citations and internal quotation marks omitted). A plaintiff cannot evade the requirements of Rule 65(b)(1) and "obtain an *ex parte* restraining order by merely pointing to the merits of its claims. Indeed, such an argument would swallow Rule 65(b)(2)'s requirement that the court consider not only the 'need for the restraining order,' but also 'the need for proceeding *ex parte*.'" Adobe Sys., Inc. v. S. Sun Prod., Inc., 187 F.R.D. 636, 641 (S.D. Cal. 1999)(citations omitted).

Here, counsel has merely provided an affidavit stating: "The facts stated in the First Amended Original Complaint & Application for Temporary Restraining Order are within my personal knowledge and are true and correct. I have been reading news articles, talking with witnesses, and reading

statements made by the parties in this matter." (Doc. # 3 at 6). So, counsel has not truly provided a certification concerning any efforts made to give notice and why notice should not be required. See Kazal v. Price, No. 8:17-cv-2945-T-23AAS, 2017 WL 6270086, at *4 (M.D. Fla. Dec. 8, 2017)(denying motion for temporary restraining order in part because "[t]he plaintiffs' attorneys fail[ed] to submit an affidavit certifying an effort to notify [the defendant] about the motion and fail[ed] to explain the necessity for an *ex parte* order"). Plaintiffs' "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for TRO without notice." Living v. Merscorp Inc., No. 1:10-CV-3410-JEC-JFK, 2010 WL 11552958, at *3 (N.D. Ga. Oct. 26, 2010), report and recommendation adopted, No. 1:10-CV-3410-JEC, 2010 WL 11553003 (N.D. Ga. Dec. 17, 2010)

Even if the Court treated the assertions in the Motion concerning notice as a sufficient Rule 65(b)(1)(B) certification, the Court is not convinced that Plaintiffs have fulfilled the requirements of Rule 65(b)(1)(A). In the Motion, Plaintiffs assert that this Court "should enter this temporary restraining order without notice to [Defendants] because Plaintiffs will likely suffer immediate and irreparable injury, loss, or damage if the order is not

6

granted before this Action can be heard and there is no less drastic way to protect plaintiffs' interests." (Doc. # 3 at 5). Yet, they present no evidence that Defendants have selected an impending date for the removal of the memorial. Instead, they insist that "[t]he course of dealing in Florida has often been to remove public Memorials without notice and under cover of darkness." (Id.). They emphasize their "belie[f] that [Defendants] will once again, following these precedents, surreptitiously remove the [memorial] without notice in the dead of night." (Id.). But Plaintiffs fail to cite actual examples of when such surreptitious removals of monuments have occurred. They provide the Court with no reason to believe that Defendants will remove the fourteen-ton memorial before an expedited hearing can be held on the request for a preliminary injunction.

In short, Plaintiffs have not provided "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The Court is mindful that "'[a]n *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution,' and the Court is unwilling to permit use of this extreme remedy in light of these

deficiencies." Thomas-McDonald v. Shinseki, No. CV 113-050, 2013 WL 12121316, at *1 (S.D. Ga. Apr. 3, 2013)(quoting Levine v. Comcoa Ltd., 70 F.3d 1191, 1194 (11th Cir. 1995)). Therefore, the Motion is denied to the extent it seeks a temporary restraining order.

However, to the extent the Motion requests a preliminary injunction, the Court refers the Motion to Magistrate Judge Julie S. Sneed, pursuant to 28 U.S.C. § 636(b)(1)(B), for an evidentiary hearing and issuance of a Report and Recommendation. The parties will be able to raise their arguments concerning the propriety of preliminary injunctive relief at the hearing on that Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs Wade Steven Gardner, Mary Joyce Stevens, Randy Whittaker, Phil Walters, Ken Daniel, and Veterans Monuments of America, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3) is **DENIED** to the extent it seeks a temporary restraining order.

(2) To the extent it seeks a preliminary injunction, the Motion is referred to the Honorable Julie S. Sneed, United States Magistrate Judge, pursuant to 28 U.S.C. §

636(b)(1)(B), for an evidentiary hearing and the issuance of a Report and Recommendation.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of November, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE