UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WADE STEVEN GARDNER, ET AL.,

　　Plaintiffs,

v.　　　　　　　　　　　　　　Case No. 8:18-cv-2843-T-33JSS

WILLIAM MUTZ, ET AL.,

　　Defendants.
_____/

**ORDER**

　　This matter comes before the Court upon consideration of Defendants William Mutz, Tony Delgado, Don Selvage, Justin Troller, and Phillip Walker's Motion to Dismiss the Complaint and Defendant Antonio Padilla's Motion to Dismiss the Complaint, both filed on December 20, 2018. (Doc. ## 12, 13). Plaintiffs Wade Steven Gardner, Mary Joyce Stevens, Randy Whittaker (individually and in his official capacity at Southern War Cry), Phil Walters (in his official capacity as 1st Lt. Commander of the Judah P. Benjamin Camp #2210, Sons of Confederate Veterans), Ken Daniel (in his official capacity as Director of Save Southern Heritage, Inc. Florida), and Veterans Monuments of America, Inc. responded on January 24, 2019. (Doc. ## 38, 39). For the reasons that follow, the Motions are granted.

I. **Background**

Plaintiffs are united by their shared concerned for the preservation of history "from a Southern perspective." (Doc. # 1 at 17, 18, 25). Gardner is a taxpayer in the City of Lakeland. (Id. at 2). Whittaker "is a citizen taxpayer of Polk County, Florida with Confederate Dead in his family lineage" and administers the organization Southern War Cry. (Id.). Stevens is a descendant of "Confederate Dead" and is a member of the United Daughters of the Confederacy ("UDC"). (Id. at 3). The Judah P. Benjamin Camp #2210 of the Sons of Confederate Veterans, as represented by Walters, is a "Florida non-profit corporation whose purpose is to 'vindicate the cause' for which the Confederate Veteran fought." (Id. at 2). Save Southern Heritage, as represented by Daniel, is a "South Carolina non-profit corporation whose purpose is to preserve the history of the south for future generations." (Id. at 3). Veterans Monuments of America "is a non-profit corporation that is organized under the laws of the State of Florida whose purpose is to protect and preserve Memorials to American veterans." (Id.).

On November 20, 2018, Plaintiffs brought this action against Mutz, Delgado, Selvage, Troller, and Walker (collectively, the "City Defendants") — all of whom are

2

involved in Lakeland's government in various roles, such as City Commissioner, City Manager, or Mayor — as well as against Padilla, who is President of Energy Services & Products Corporation, and Kenneth Detzner, who was the Florida Secretary of State at the time. (Id. at 1). Detzner has since been replaced as a party by Michael Ertel, who is the current Florida Secretary of State. (Doc. # 30).

This action concerns a memorial — a "Cenotaph" — dedicated to Confederate soldiers who died during the Civil War that stands in Lakeland's Munn Park. (Doc. # 1 at 5-7). The memorial was erected by the UDC with the approval of the Lakeland City Commission in 1910. (Id. at 7). The memorial is a "massive 26' foot 2 1/2 story, approximately 14 ton Cenotaph, with base dimensions of 9' by 9.'" (Id.). The memorial is engraved with the words "Confederate Dead," as well as a poem and images of Confederate flags. (Id. at 9).

Over a century later, the City of Lakeland began receiving complaints about the landmarked memorial. (Id. at 14-15). On December 4, 2017, the Lakeland City Commission voted at a City Council meeting to "start the process" of removing the memorial. (Id. at 15). Plaintiffs maintain this vote was "a violation of the City's own Historic Preservation Ordinance." (Id.). Then, "[o]n May 7, 2018 the Lakeland City

3

Commission voted to relocate the Cenotaph from Historic Munn Park to another site out of the historic district, 'provided private donations paid for the full costs.'" (Id.).

In October of 2018, some Defendants voted to remove the memorial using the City's funds from the red light camera program. (Id. at 16). A Lakeland City Commission meeting was scheduled for November 19, 2018, to discuss, among other things, using revenue from the red light camera program to remove the memorial. (Id. at 17). The Complaint does not describe the result of the November 19 meeting.

Plaintiffs assert seven counts against the various Defendants. (Id. at 22-29). They allege that the City Defendants have violated the First and Fourteenth Amendments of the United States Constitution by "deciding to remove the Cenotaph which communicated minority political speech in a public forum." (Id. at 22). They seek a declaration that Defendants' actions violate their due process rights. (Id. at 26). Furthermore, Plaintiffs claim that Defendants violated (i) the City of Lakeland's Historic Preservation Ordinance, (ii) Section 267.013, Florida Statutes, (iii) violated the public trust, and (iv) breached a bailment agreement. (Id. at 24-29).

The City Defendants and Padilla have moved to dismiss the Complaint on various grounds, including that Plaintiffs lack standing to bring their federal and state claims. (Doc. ## 12, 13). Plaintiffs have responded (Doc. ## 38-39), and the Motions are ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where, as here, the jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

### III. **Analysis**

First, Defendants challenge the Plaintiffs' standing to bring their First Amendment and due process claims. (Doc. # 12 at 9-17). Next, Defendants argue that Plaintiffs lack standing to bring their state law claims. (Id. at 17-23; Doc. # 13 at 2-3). Even if Plaintiffs have standing, Defendants insist that the City Defendants have either qualified or legislative immunity, and that Plaintiffs have failed to

state claims for relief. (Doc. # 12 at 23-25; Doc. # 13 at 3-4).

The Court will address the federal and state claims separately.

**A.   Article III Standing**

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016)(citing Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of establishing' standing." Clapper, 133 S. Ct. at 1148 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

Injury-in-fact is the most important element. Spokeo, 136 S. Ct. at 1547. An injury-in-fact is "'an invasion of a

7

legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Id. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

**B. First Amendment Claim**

In Count I, Plaintiffs maintain that the City Defendants violated their First Amendment right to free speech by voting to remove the Confederate memorial. (Doc. # 1 at 22-24). The Complaint alleges that the City Defendants "abridged Plaintiffs' right to free speech and equal protection by deciding to remove the Cenotaph which communicated minority political speech in a public forum." (Id. at 22). "Removal of the Cenotaph is an injury to Compelled and Symbolic speech." (Id. at 24).

Defendants argue that Plaintiffs lack standing to assert their First Amendment claim because the Cenotaph is government speech. (Doc. # 12 at 10-15). This argument goes

8

to the merits of the First Amendment claim and, indeed, Defendants also argue that this claim fails as a matter of law because the Cenotaph is government speech. (Id. at 13).

It is well settled that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). For this reason, "if the attack implicates an element of the cause of action, courts are to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." Scarfo v. Ginsberg, 175 F.3d 957, 965 (11th Cir. 1999)(citation and quotation marks omitted). "In such a case, a district court is to evaluate a defendant's assertion of lack of subject matter jurisdiction as a Rule 12(b)(6) motion or a motion for summary judgment, and send the case to the jury if there are disputed issues of material fact." Id. Given that Defendants also challenge this claim on the merits, the Court treats the Motion as brought under Rule 12(b)(6).

"[G]overnment speech is not restricted by the Free Speech Clause." Pleasant Grove City v. Summum, 555 U.S. 460, 469 (2009). And "[p]ermanent monuments displayed on public property typically represent government speech." Id. at 470.

9

In making this ruling, the Supreme Court recognized that "[g]overnments have long used monuments to speak to the public." Id. "When a government entity arranges for the construction of a monument, it does so because it wishes to convey some thought or instill some feeling in those who see the structure." Id.

A monument in a public park is government speech even when the monument was privately funded. "Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land." Id. at 470–71.

Here, although a private organization funded the Cenotaph, the City approved the monument's placement in Munn Park. Thus, the Cenotaph is government speech. See Id. at 472 ("In this case, it is clear that the monuments in Pleasant Grove's Pioneer Park represent government speech. Although many of the monuments were not designed or built by the City and were donated in completed form by private entities, the City decided to accept those donations and to display them in the Park.").

Plaintiffs' attempt to distinguish this case from Summum is unavailing. (Doc. # 38 at 6-7). True, Summum involved the

erection of a new religious monument in a park, 555 U.S. at 464-65, while this case involves a non-religious monument installed in a park over one hundred years ago. But these distinctions make no difference here. The rule of Summum — that a privately donated monument erected in a public park is government speech — applies equally to parks old and new and all monuments, regardless of their content.

The City's decision to remove the Cenotaph is also government speech. The government's freedom to speak for itself "includes 'choosing not to speak' and 'speaking through the . . . removal' of speech that the government disapproves." Mech v. Sch. Bd. of Palm Beach Cty., 806 F.3d 1070, 1074 (11th Cir. 2015)(quoting Downs v. L.A. Unified Sch. Dist., 228 F.3d 1003, 1012 (9th Cir. 2000)).

Because the Cenotaph and its removal are government speech, Plaintiffs do not have a legally protected interest in that speech and their First Amendment claim fails as a matter of law. Count I is dismissed with prejudice.

### C. Due Process Claim

Count IV, which is labelled "Breach of Due Process under 28 U.S.C. § 2201," reads in its entirety:

> The City is obligated to provide Plaintiffs and other like-minded Florida and American citizens due process, including reasonable notice, an

>     opportunity to be heard and a hearing before a neutral arbiter, before removing the Historic Munn Park Cenotaph. In this case, due process additionally includes review by the Historic Preservation Board. This declaration is sought pursuant to 28 U.S.C. § 2201. Plaintiffs also seek attorney's fees and costs in conjunction with their declaratory judgment claim.

(Doc. # 1 at 26).

"The Due Process Clause of the Fourteenth Amendment provides: '[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .'" Carey v. Piphus, 435 U.S. 247, 259 (1978)(citation omitted). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Id. To state a claim for denial of procedural due process, a plaintiff must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." AFL-CIO v. City of Miami, 637 F.3d 1178, 1186 (11th Cir. 2011)(internal citations omitted).

Defendants again argue that Plaintiffs lack standing to bring this claim. (Doc. # 12 at 15-17). Even if Plaintiffs had a protected liberty or property interest in the Cenotaph's placement in Munn Park (Defendants also challenge this),

Defendants insist that Plaintiffs lack a particularized interest sufficient to establish standing. (Id. at 16). Plaintiffs claim they are interested parties because of their beliefs — either in support of the Confederacy or merely the historical preservation of Confederate memorials as vestiges of "the history of the South" — as well as their status as descendants of the "Confederate Dead." (Doc. # 1 at 2-3). Indeed, in their response, Plaintiffs insist that they have sufficiently particularized interests in the Cenotaph, including "genealogical relationships and membership in associations for particular historical and cultural foci." (Doc. # 38 at 9).

The Court agrees with Defendants that Plaintiffs — whether bringing their claims as individuals or representatives of an organization — cannot base their standing on their preferences for the preservation of Confederate memorials or the "Southern perspective." As Defendants explained, "Plaintiffs' value preferences are not sufficiently particularized, but are general, public-interest grievances, and '[v]indicating the public interest . . . is the function of [the legislative and executive branches],' not the judicial branch." (Doc. # 12 at 17)(quoting Lujan, 504 U.S. at 576).

However, one Plaintiff — Gardner — also bases his standing on his status as a Lakeland taxpayer. (Doc. # 1 at 2). Defendants argue that Gardner does not have taxpayer standing to challenge removal of the Cenotaph. (Doc. # 12 at 16). "A municipal taxpayer has standing 'when the taxpayer is a resident who can establish that tax expenditures were used for the offensive practice.'" Gagliardi v. City of Boca Raton, 197 F. Supp. 3d 1359, 1366 (S.D. Fla. 2016)(quoting Pelphrey v. Cobb Cty., 547 F.3d 1263, 1280 (11th Cir. 2008)).

The Complaint alleges that the City is using private donations as well as revenue from the City's red light camera program to fund the relocation of the Cenotaph. (Doc. # 1 at 17, 21). The revenue from the red light camera program comes from citations to those who run red lights — not from taxes. So, Defendants persuasively reason, "[b]ecause Plaintiffs do not complain about the expenditure of tax dollars, Gardner cannot establish taxpayer standing." (Doc. # 12 at 16). Notably, Plaintiffs fail to address this argument in their response. The Court finds that Gardner lacks taxpayer standing to challenge the relocation of the Cenotaph.

Therefore, all Plaintiffs lack standing to assert the declaratory judgment claim regarding an alleged breach of

procedural due process. Count IV is dismissed without prejudice.

Alternatively, even if Plaintiffs had standing, Defendants argue that Plaintiffs cannot establish the deprivation of a constitutionally-protected liberty or property interest because the Cenotaph is government speech. (Id. at 15-16). According to Defendants, "[t]he City's decision to relocate the Confederate Monument from one park to another is a legislative decision that does not deprive Plaintiffs of any constitutionally-protected liberty or property interest." (Id. at 16). Therefore, they argue this claim should alternatively be dismissed on the merits. The Court agrees. Because the Cenotaph is government speech and not Plaintiffs' speech, Plaintiffs lack a liberty interest in the Cenotaph and thus cannot state a procedural due process claim based on the memorial's relocation. Therefore, Count IV is also subject to dismissal on this ground.

### D. State Law Claims

All the federal claims have now been dismissed. The remaining claims — Count II for breach of bailment agreement, Count III for violation of public trust, Count V for violation of the City's historic preservation ordinance, Count VI for intent and collusion to violate Fla. Stat. § 872.02, and Count

VII for violation of Fla. Stat. § 267.013 — are governed by state law. Because certain Plaintiffs and Defendants are both citizens of Florida, the Court does not have diversity jurisdiction over the remaining claims. Therefore, the only basis for the Court's jurisdiction over the remaining claims is its exercise of supplemental jurisdiction.

"The dismissal of [a plaintiff's] underlying federal question claim does not deprive the [c]ourt of supplemental jurisdiction over the remaining state law claims." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). "Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the [c]ourt has dismissed all claims over which it had original jurisdiction, but [the court] is not required to dismiss the case." Id. Nevertheless, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004). And the Supreme Court has advised that "when federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal

16

court should decline the exercise of jurisdiction." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

Here, the Court determines it is appropriate to decline the exercise of supplemental jurisdiction over the remaining state claims. Therefore, those claims are dismissed without prejudice so that Plaintiffs may re-file them in state court, if they wish.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants William Mutz, Tony Delgado, Don Selvage, Justin Troller, and Phillip Walker's Motion to Dismiss the Complaint (Doc. # 12) is **GRANTED** as set forth herein.

(2) Defendant Antonio Padilla's Motion to Dismiss the Complaint (Doc. # 13) is **GRANTED** as set forth herein.

(3) Count I, for violation of the First Amendment of the United States Constitution, is **DISMISSED** with prejudice. Count IV, for declaratory judgment regarding alleged breaches of due process, is **DISMISSED** for lack of standing.

(4) Because the Court declines to exercise supplemental jurisdiction over the remaining state law claims, Count II, Count III, Count V, Count VI, and Count VII are **DISMISSED** without prejudice.

(5) The Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>28th</u> day of January, 2019.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE